# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510                                                                                     Telephone: (212) 317-1200
New York, New York 10165                                                                                   Facsimile: (212) 317-1620

_____

michael@faillacelaw.com

February 21, 2020

**BY ECF**

HON. VALERIE E. CAPRONI, U.S.D.J.
SOUTHERN DISTRICT OF NEW YORK
40 CENTRE STREET
NEW YORK, NEW YORK 10007

                            Re:  Guzman Oropeza et al v. Campania Felix LLC et al
                                  19-cv-04430-VEC

Dear Judge Caproni:

      This office represents plaintiff Antonio Guzman Oropeza ("Plaintiff Guzman") in the above referenced matter. Plaintiff writes to submit this letter setting forth our views on why the agreed upon settlement in this matter is fair.

      The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions before a court ordered mediator. A copy of the proposed Agreement is attached hereto as "Exhibit A." We therefore ask the Court to approve the settlement, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice.

1. **Background**

      Plaintiff Guzman filed his Complaint against Defendants alleging claims for unpaid minimum wage, overtime wages, liquidated damages, interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. (FLSA), the New York Minimum Wage Act, N.Y. Lab. Law § 650 *et seq.*, and the annual notice and wage statement requirements of the New York Labor Law (N.Y. Lab. Law. § 195).

      Plaintiff Guzman was employed by Defendants from approximately June 2017 until on or about April 27, 2019, ostensibly as a delivery worker. However, Plaintiff Guzman was also required to spend a significant portion of his work day performing non-tipped duties. From approximately June 2017 until on or about July 2017, Plaintiff Guzman worked typically 43 hours per week. From approximately July 2017 until on or about April 27, 2019, Plaintiff Guzman worked typically 42 to 42.5 hours per week. Throughout his employment, Defendants paid Plaintiff Guzman his wages by check. From approximately June 2017 until on or about December 2017, Defendants paid Plaintiff Guzman $7.50 per hour for the first 40 hours and

Page 2

$11.25 per hour for his overtime hours. From approximately January 2018 until on or about March 2018, Defendants paid Plaintiff Guzman $8.00 per hour for the first 40 hours and $12.00 per hour for his overtime hours. From approximately March 2018 until on or about December 2018, Defendants paid Plaintiff Guzman $8.65 per hour for the first 40 hours and $12.98 per hour for his overtime hours. From approximately January 1, 2019 until on or about January 31, 2019, Defendants paid Plaintiff Guzman $9.00 per hour for the first 40 hours and $13.50 per hour for his overtime hours. From approximately January 2019 until on or about April 27, 2019, Defendants paid Plaintiff Guzman $10.00 per hour for the first 40 hours and $15 per hour for his overtime hours.

Defendants categorically deny the allegations in the Complaint.

2. **Settlement Terms**

Plaintiff Guzman alleges he was entitled to back wages of approximately $17,814.68. Plaintiff Guzman estimates that if he had recovered in full for his claims, he would be entitled to approximately $51,678.54 which represents calculated actual damages, penalties, and interest, but excludes attorneys' fees and costs. A copy of Plaintiff Guzman's damages chart, breaking down each amount sought from Defendants, is attached as "Exhibit B." The parties have agreed to settle this action for the total sum of $22,500. The settlement will be paid in a lump sum.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Throughout the litigation, there were sharply contested factual and legal disputes that went to the heart of Plaintiff Guzman's claims. Defendants were adamant that Plaintiff worked less hours than he claimed, and indicated they were willing to provide witnesses to this effect.

Considering the risks in this case outlined above, Plaintiff believes that this settlement is an excellent result, and should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

3. **Plaintiff's Attorneys' Fees are Fair and Reasonable**

Under the settlement, and in accordance with their retainer agreement with Plaintiff Guzman, Plaintiff Guzman's counsel will receive $7,879.33 from the settlement fund as attorneys' fees and costs. This represents one third of the recovery in this litigation (inclusive of costs) as

Page 3

well as a reduction in fees from what is identified in Plaintiff Guzman's retainer agreement, which provides that forty percent of Plaintiff Guzman's recovery will be retained by the firm plus costs.

Plaintiff's counsel's lodestar in this case is $3,725.00. A copy of Plaintiff Guzman's billing record is attached as "Exhibit C." Mr. Michael Faillace's standard billing rate is $450 an hour (MF), Mr. Daniel Tannenbaum's standard billing rates is $350 an hour (DT).

The amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiff's counsels' significant experience representing Plaintiffs in New York City in wage and hour litigation, Plaintiff's counsel was able to obtain a good result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations.

A brief biography of the attorneys who performed billed work in this matter is as follows:

I am the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. From 1983 to 2000, I was in-house Employment Counsel with International Business Machines Corporation (IBM). I taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and am a nationally-renowned speaker and writer on employment law. I am also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

Daniel Tannenbaum is an associate at Michael Faillace & Associates, P.C. He graduated Hofstra Law School in 2008, and is admitted to the New York Bar, New Jersey Bar, United States District Court, Southern District of New York and the United States District Court, Eastern District of New York. Since law school he has practiced labor and employment law and

Page 4

commercial litigation at a number of law firms. Since joining Michael Faillace & Associates, P.C. in March 2019, he has been responsible for a caseload involving all aspects of the firm's employment docket in federal court.

   Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

             Respectfully submitted,

             <u>/s/Michael Faillace</u>
             Michael Faillace, Esq.
             MICHAEL FAILLACE & ASSOCIATES, P.C.
             Attorneys for the Plaintiff

Enclosures